IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**JOHN FROST, et al,**

    **Defendants.**                                  Case No. 05-cr-30133-6-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Before the Court is defendant John Frost's Motion for New Trial (Doc. 452),[1] filed pursuant to **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, to which the Government has filed its opposing Response (Doc. 460).

Frost was found guilty by a jury as to Counts 1 and 5 (Docs. 419 & 422) of the Indictment (Doc. 1). Count 1 charged Frost with conspiracy to knowingly and intentionally manufacture, distribute, and possess with intent to distribute cocaine and a mixture or substance containing cocaine base, in the form of, or commonly known as "crack" cocaine, in violation of **21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A),** and **21 U.S.C. § 846**. Count 5 charged him with knowingly and intentionally

---

[1] The Court also notes it previously granted an extension of time for Frost to file this Motion (*see* Doc. 403).

distributing five hundred grams or more of a mixture or substance containing cocaine, in violation of **21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B)**.

Regarding the jury's finding of "guilty" as to Count 1, the Special Verdict found Frost guilty of conspiring to distribute a mixture or substance containing cocaine base in an amount less than 500 grams (Doc. 420). In a separate Special Verdict also regarding Count 1, the jury did not find Frost guilty of conspiracy to distribute 5 grams or more of a mixture or substance containing cocaine base, in the form of, or commonly known as, "crack" cocaine (Doc. 421). As to Count 5, although found guilty of the charge, the Special Verdict did not find Frost guilty of knowingly and intentionally distributing 500 grams or more of a mixture or substance containing cocaine (Doc. 423). Frost now awaits sentencing for his conviction, as well as resolution of this post trial motion.

## II. LEGAL STANDARD

Under **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, a defendant may move for a new trial. Upon review, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." **FED. R. CRIM. P. 33(a)**. If the basis for seeking a new trial is not due to new evidence, then the Court must determine if a new trial is warranted because there exists a "reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." ***United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (citing *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996))**. A new trial may also be warranted where a "trial errors or

omissions have jeopardized the defendant's substantial rights." ***United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (citing *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989))**. Such a determination is completely within the Court's sound discretion . ***Id*. (citing *United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir. 1984))**. However, the Court should be mindful that the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" ***United States v. Linwood*, 142 F.3d 418, 422 (7th Cir.1998) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir.1990))**.

### III. <u>DISCUSSION</u>

**A.    Denial of Motion for Acquittal**

Frost's first issue addressed by his Rule 33 Motion for New Trial is that the Court erred in denying his Motion for Judgement of Acquittal, made at the conclusion of the Government's case. Frost fails to further elaborate this assertion with supporting argument. The following paragraphs of his Motion (Doc. 452, ¶¶ 2-5) argue that the jury verdicts are contrary to the weight of the evidence, not supported by substantial evidence, and that the special verdicts are not consistent with the verdicts finding Frost guilty as to Counts 1 and 5. The Court is unable to decipher whether the argument regarding the jury verdicts are the reasons *why* Frost believes the Court erred in denying his request for a judgment of acquittal at the close of trial or if they are additional grounds for his Motion for New Trial. Perhaps they are both.

Either way, the Court does not find it erred in denying Frost's oral motion for judgment of acquittal. In considering a motion for a judgment of acquittal, the Court "must view all evidence in the light most favorable to the prosecution," **United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999)**, and may only acquit the moving defendant if there is no "relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt." **United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989) (alteration in original) (citation omitted)**. As the Court previously found at trial, there was ample evidence existed upon which a reasonable juror could have found Frost guilty as to Counts 1 and 5 beyond a reasonable doubt. The fact Frost now asserts that the verdicts were not supported by substantial evidence is not enough for the Court to find otherwise without further substantiation from Frost. Contrary to Frost's assertions, the jury was not required to find Frost guilty of conspiracy to distribute both a mixture or substance containing cocaine and "crack cocaine." Additionally, it is not accurate to state that the special verdicts made "no specific findings of any amount of cocaine or cocaine base" (Doc. 452, ¶ 5) – the special verdicts reflect that the jury found Frost conspired to distribute and then distributed a mixture or substance containing cocaine in an amount under 500 grams. As the Government argues in its Response, the drug amount was not an element of the charged offense (Doc. 460, p. 5, citing **United States v. Martinez, 301 F.3d 860, 864 (7th Cir. 2002)**; **United States v. Tolliver, 454 F.3d 660, 669 (7th Cir. 2006)**).

Upon this basis, Frost shows no justifiable reason for granting a new trial.

**B.     Special DEA Agent McGarry**

Frost essentially makes the same argument as his co-defendants – that the Court erroneously allowed Special Agent John McGarry to provide his "impressions" of the wiretapped telephone conversations involving Frost and his co-defendants by finding his testimony was lay testimony and not expert testimony. Frost also believes the Court erred in admitting Agent McGarry's "expert" testimony, as the Government failed to disclose the Agent as an expert witness pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 16.

Special Agent McGarry was the lead DEA agent on the investigation of co-defendants' drug distribution conspiracy. Part of his duty as lead investigator required him to oversee all wiretapped telephone calls. During trial, Frost joined with two separate Motions in Limine to Exclude Expert Testimony of Undisclosed Government Witness, filed by both Rollins, Jr. and Talia Pittman (Docs. 342 & 358). The defendants sought to bar Agent McGarry's testimony as it was not disclosed pursuant to a Motion for Disclosure of Expert Testimony made by co-defendant Slack (Doc. 276).

In particular, Frost's argument in his Rule 33 Motion centers around the assertion that Agent McGarry was an "expert" witness for the Government, in that he testified as to what he believed "was occurring in the [wiretapped] conversation, including his beliefs as to which specific drugs, amounts and prices were being

discussed in each conversation" (Doc. 450, p. 5). In other words, this "specialized" knowledge regarding code words for certain narcotics constituted expert testimony under **FEDERAL RULE OF EVIDENCE 702**. On the other hand, the Government asserted Agent McGarry's testimony was actually lay witness testimony under **FEDERAL RULE OF EVIDENCE 701**, as he merely provided his "impressions" of what he had personally heard during the wiretapped conversations. Therefore, because the Government never offered McGarry as an expert witness, it does not believe it failed to comply with the disclosure requirements of **FEDERAL RULE OF CRIMINAL PROCEDURE 16**. It was specifically pointed out to the jury that the agent was relying on his experience with these particular wiretaps and not his years as an agent.

Under **Rule 701**, lay opinion testimony must be limited to the observations of the witness "that are 'not based on scientific, technical, or other specialized knowledge within the scope of **Rule 702**.'" *United States v. Conn*, **297 F.3d 548, 553 (7th Cir. 2002)(quoting FED. R. EVID. 701)**. The court must closely scrutinize lay witness testimony to ensure it does not encroach upon the realm of expert testimony, especially if that witness has not previously been identified as an expert witness. *Id.* In *Conn*, the Seventh Circuit found the testimony of an ATF agent went beyond that of a lay witness because "[h]e was asked to draw upon his accumulated knowledge and to provide information to the jury about the appropriate characterization of Mr. Conn's firearms . . . ." *Id.* **at 554-55**. However, the Seventh Circuit acknowledged it was possible for an agent to testify as a lay witness if based

only upon his personal participation in the investigation of the conspiracy.  *Id.* at 555 n.3 (citing *United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001)).

This Fifth Circuit case cited in *Conn*, although not binding precedent, is nevertheless insightful and on point with the issues raised by the Motions in Limine.  In *Miranda*, the FBI Special Agent involved with the investigation of the conspiracy gave testimony regarding the meaning behind various code words used by the various callers to describe certain narcotics.  *Miranda*, 248 F.3d at 441.  Defense counsel challenged the Agent's testimony, arguing it was actually **Rule 702** expert testimony and the Agent was unqualified to testify as an expert.  The Government argued the Agent's testimony was being offered as **Rule 701** lay witness testimony.  The Fifth Circuit agreed with the Government, stating as follows:

> [The Agent's] extensive participation in the investigation of this conspiracy, including surveillance, undercover purchases of drugs, debriefings of cooperating witnesses familiar with the drug negotiations of the defendants, and the monitoring and translating of intercepted telephone conversations, allowed him to form opinions concerning the meaning of certain code words used in this drug ring based on his personal perceptions. We therefore hold that [the Agent's] testimony was admissible pursuant to Rule 701 and that the district court did not abuse its discretion in admitting his testimony.

*Id.*

During trial, the Court applied the same reasoning as the Fifth Circuit. The Court limited Agent McGarry's testimony to his personal perceptions and information acquired solely from his extensive participation in the investigation of

the conspiracy. Allowing this testimony under **Rule 701** was permissible because the Court observed no consistency between the related criminal drug conspiracy cases in regards to the narcotics code words used among the co-conspirators. Instead, the code words seem individualized for each particular conspiracy, seemingly, at times, the co-conspirators come up with code terms "on the fly." Therefore, there is no universal narcotics "code language" that one may study and become familiarized with based upon training and experience for the testimony in question. Thus, the Court denied the Motion because "each group of conspirators is different and there's no way to really apply your training and your experience to figure out what each group's terminology means. It's just guesswork each and every time . . ." (Trial Transcript, January 26, 2007).[2] The jury was advised at the time of the testimony that it could accept the testimony but did not have to and would have to determine for itself the meaning of the words.

Frost has presented nothing more than a broad assertion that the Court's decision to allow Agent McGarry to testify as a lay witness was erroneous as his impressions were irrelevant or unduly prejudicial. In this case, the Court found there was no "universal code" with which one could study or become proficient in over time, and it also limited the testimony to Agent McGarry's own perceptions with the investigation regarding the conspiracy at issue in this case only. Frost's

---

[2] The Court notes that there are no page numbers as a transcript for this portion of the trial was never ordered and therefore, the quote is taken from a rough draft of the real time electronic transcript.

argument, therefore, is not well-taken. Further, because the Court does not find Agent McGarry's testimony constituted **Rule 702** expert testimony, it also finds the Government did not fail to properly disclose under **Rule 16**. Even had this testimony been inadmissible, the Court does not find it would have prejudiced the jury's verdict as there was other witness testimony provided to decipher the code language, amounts and pricing of the narcotics, from which the jury could have derived its finding of guilt.

**C.     Government's Conduct**

In this Rule 33 Motion, Frost also argues he was prejudiced by the Government's untimely disclosure of certain discovery and by allowing Timothy Weddle to testify. Although Frost does not specify *what* discovery was untimely produced by the Government, the Court ventures to guess it is the same items that were at issue in the Motion for New Trial filed by co-defendant, James E. Rollins, Jr. These items consisted of Weddle's proffer statement and letters.

Regarding the issue of the Government's production efforts, the Court held that, although the Court did not favor the late disclosure, even inadvertent late disclosure:

> **18 U.S.C. § 3500(a)** does not require the Government to provide for a statement or report from one of its witnesses until *after* said witness has testified at trial. While it is within the discretion of the Court to order disclosure prior to trial, it is not a requirement. Further, **Rule 16** of the Federal Rules of Criminal Procedure does not provide for this type of disclosure. Therefore, [Rollins, Jr.'s] argument that he is entitled to such information regarding Weddle is not well-taken . . . the rule and

Page 9 of 12

>the statute do not require disclosure until after testimony and this Court will not require more than what is required by rule and law.

(Doc. 335 - Court's January 19, 2007 Order denying Motion to Continue).

Thus, the Court denied the continuance.  This holding aligns with Seventh Circuit law that exculpatory information must be disclosed by the Government, but disclosure can properly be made during trial without amounting to a **Brady** violation, "as long as the defendant is not prevented from having a fair trial." ***See, e.g., Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986)(citing *United States v. Allain*, 671 F.2d 248, 255 (7th Cir.1982))**.  Because Frost has failed to demonstrate how this disclosure prevented him from having a fair trial, there is no need to further address the issue; the Court's prior ruling stands.  Accordingly, this does not present valid grounds for a new trial.

Frost's issue also likely deals with letters written by Weddle to Assistant United States Attorney Randy Killian and Detective Rathgeb.  The Government provided these letters to defense counsel during the course of trial; the Government stated that it had no intention of using these letters as evidence, however.  Defense counsel believed Weddle's letters revealed his intent to fabricate his testimony, as in one letter, he requested to see photographs of co-defendants John Frost and James Rollins, Sr. (although the Government construes the letter as one merely requesting Detective Rathgeb remind the DEA agent to follow through on a photographic lineup, previously suggested to Weddle by that DEA agent).  According to defense counsel,

Weddle wanted to see these photographs so that he could later identify the co-defendants during trial (presuming that if he did not actually know these co-defendants, he would not have been able to identify them otherwise).

During trial, in order to remedy any prejudice that might have been caused by the late (though not improper) disclosure, the Court also took the extraordinary measure of recessing trial so that defense counsel could investigate and prepare for cross-examination. Thus, the Court finds no prejudice has occurred due to these letters or the means in which they were disclosed. Frost presents nothing further to substantiate his assertion of the Court's erroneous ruling and thus, it will stand, again presenting no grounds for granting a new trial.

Frost also states he was prejudiced by the Government putting into evidence testimony of witnesses it should have known would be untruthful or otherwise tainted. Frost only specifically identifies one witness, Timothy Weddle, giving reason that his letter inquiring about a photograph of Frost suggests intent of perjury. During trial, when this issue was raised by defense counsel, the Court found no clear indication to deem Weddle's testimony as "false." For the Court to grant defense counsel's request to bar his testimony would be too extraordinary of a sanction unless the Court was able to absolutely find Weddle perjured himself. The Court already allowed defense counsel the extraordinary measure of recessing the trial so that there would be additional time for investigation into Weddle's letters to prepare for cross-examination. Further, during Weddle's cross-examination, the Court gave defense counsel the opportunity to go beyond the scope of direct. Weddle

was effectively cross examined by more than one defense counsel. That cross examination effectively placed Mr. Weddle's credibility squarely into question, but did not come close to suggesting prosecutorial misconduct or providing a basis for the extraordinary remedy of striking the testimony. The Court does not find prosecutorial misconduct existed in this case. Yet, even if there theoretically had been misconduct of some nature, it would still not be enough for Frost to meet his Rule 33 burden warranting a new trial.

## IV. CONCLUSION

To summarize, the Court does not find that the items raised in Frost's Rule 33 Motion amount to trial errors. In any event, in the Court's discretion, it does not find Frost has met his burden under Rule 33 to show that Court error resulted in having a prejudicial effect upon the jury verdict nor did it jeopardize his substantive rights in order to justify the extreme remedy of granting a new trial. Accordingly, Frost's Motion for New Trial (Doc. 452) is **DENIED**.

**IT IS SO ORDERED.**

Signed this 24th day of May, 2007.

/s/     David  RHerndon
**United States District Judge**